UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE N. ARRELLANO-LOPEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>J. GONZALES, *et al.*,<br><br>        Defendants. | Case No. 1:23-cv-00093-EPG (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO (1) ASSIGN A DISTRICT JUDGE AND (2) ADD DEFENDANTS ON THE DOCKET<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ON PLAINTIFF'S FAILURE-TO-PROTECT CLAIM AGAINST OFFICER J. GONZALES AND PLAINTIFF'S RETALIATION CLAIM AGAINST OFFICER J. HARDIN<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY (30) DAYS |

      Plaintiff Jorge N. Arrellano-Lopez is a prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1] Plaintiff's complaint, as amended, alleges that he was attacked by an inmate in retaliation for filing grievances against a correctional officer, that prison officials failed to protect him from this attack, and that he was subjected to due process violations relating to falsified prison documents.

      After screening Plaintiff's initial complaint, the Court determined that only the following claims should proceed: Plaintiff's claim for failure to protect in violation of the Eighth Amendment against Officer J. Gonzales and Plaintiff's claim for retaliation in violation of the First Amendment against Officer J. Hardin. (ECF No. 10). The screening order gave

---

[1] Plaintiff has paid the filing fee and is thus not proceeding *in forma pauperis*.

1

Plaintiff the options of proceeding on these claims, filing an amended complaint, or standing on his complaint and having it review by a district judge. Plaintiff chose to amend his complaint, which is now before the Court for screening.

After reviewing the amended complaint, the Court concludes that only the following claims should proceed: Plaintiff's claim for failure to protect in violation of the Eighth Amendment against Officer J. Gonzales and Plaintiff's claim for retaliation in violation of the First Amendment against Officer J. Hardin. Thus, the Court will recommend that these claims proceed and that all other claims and Defendants be dismissed.

Plaintiff has thirty days from the date of service of these findings and recommendations to file any objections.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

1   Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal
2   pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that
3   *pro se* complaints should continue to be liberally construed after *Iqbal*).

**II.    SUMMARY OF PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff sues nine prison officials who worked at Pleasant Valley State Prison (PVSP) during the events of the complaint: (1) Correctional Officer (CO) J. Gonzales;[2] (2) CO M. Childers; (3) CO C. Vang; (4) Sergeant P. Chavez; (5) Lieutenant P. Chavez;[3] (6) Captain R. Kuhn; (7) Warden Ron Godwin; (8) Sergeant F. Nevarez; and (9) CO J. Hardin.[4] Because Plaintiff has added Defendants in the amended complaint, the Court will direct the Clerk of Court to add Defendants (1) CO C. Vang; (2) Sgt. P. Chavez; (3) Lt. P. Chavez; (4) Captain R. Kuhn; (5) Warden Ron Godwin; and (6) Sgt. F. Nevarez to the list of defendants on the docket.

All of the allegations in the complaint revolve around an incident where Plaintiff was attacked by a fellow inmate.[5] Plaintiff filed a prison grievance on May 13, 2021 alleging that he was being continually harassed by Defendant Hardin and that he feared staff retaliation. And he continued to complain thereafter. Defendant Hardin, told Plaintiff that, "He would get his."

On May 20, 2021, at approximately 1600 hours, yard and dayroom program ended. An inmate named Labelle came to Plaintiff's cell at approximately 1620 hours stating, "I heard you filing paperwork on COs; when your door opens you getting it."

Defendant Gonzales had observed Inmate Labelle in the dayroom earlier and opened Plaintiff's cell door so that Inmate Labelle could attack Plaintiff as Gonzales knew that Inmate Labelle was not assigned to Plaintiff's cell and dayroom program had ended. Once Plaintiff's cell door opened, Inmate Labelle punched Plaintiff in the face, leading Plaintiff to fall backwards hitting the floor. Plaintiff screamed for Inmate Labelle to stop attacking him and for

---

[2] Plaintiff also spells this Defendant's name as "Gonzalez." The Court uses "Gonzales" for consistency.
[3] According to Plaintiff, there are two prison employees named P. Chavez at PVSP, one is a sergeant and the other is a lieutenant.
[4] Plaintiff's list of Defendants varies in two places in the amended complaint. (*Compare* ECF No. 15, p. 2, *with* p. 22). The Court has review both lists and included all Defendants.
[5] For readability, minor alterations, like altering punctuation, have been made to quotations from Plaintiff's complaint without indicating each change.

3

someone to help him. During this incident, another inmate entered Plaintiff's cell and started punching and kicking him too. At some point during the attack, Plaintiff lost consciousness.

Defendants Gonzales, Childers, and Vang failed to stop the attack; and Gonzales was observing from the control booth. Plaintiff states that a control booth officer has the duty, during "count time" to order inmates to close open cell doors and will let floor officers know if this order is not obeyed, which will lead the floor officers to go check why the cell door remains open.

Plaintiff states that all officers working in Building 2 - Yard D were deliberately indifferent to his cries for help. He states that Gonzales prepared an incident report, stating that Gonzales heard a banging noise coming from near cell 109 and Gonzales immediately notified Childers and Vang. According to Plaintiff, this loud noise was from him because he solely occupies cell 109. He asserts that control booth officers know if any cell door is open because a red light on a board will illuminate showing them that the door is open.

Gonzales wrote that Gonzales observed Childers use his radio to notify Central Control of the medical emergency and activated his personal alarm device and that responding staff began to provide Plaintiff with medical care after Gonzales opened the cell door. Additionally, after Gonzales opened the door, Hardin placed Inmate Labelle in handcuffs. Further, Gonzales used the public address system to order all inmates in the dayroom to get down.

Defendant Sgt. Chavez provided a staff narrative stating that no staff or inmates witnessed the altercation at issue and ultimately determined that it was a fight. Plaintiff states that he suffered severe injuries from the attack and that medical responded at 1625 hours. However, Labelle had almost no injuries. Plaintiff states that he received a RVR for fighting and generally indicates that Sgt. Chavez's labeling the altercation as a fight was false and done in bad faith, asserting that no other officers labeled the event a fight. However, Plaintiff states that he was ultimately found not guilty of the RVR. Plaintiff states that Defendant Kuhn reviewed Sgt. Chavez's narrative and accepted it as true despite there being other evidence available.

Plaintiff discusses a "CDCR 128-B compatibility chrono" dated May 20, 2021, that Lt.

4

Chavez signed and that it was made to look like Plaintiff and Inmate Labelle signed it.[6] Plaintiff appears to indicate that Lt. Chavez was not even around on May 20, 2021. He says that Vang and Childers were together when they found him injured in his cell and Vang was with Plaintiff when he left PVSP to go to the hospital. Rather, Plaintiff says that he signed a compatibility chrono on June 6, 2021, and did not sign it on May 20, 2021. Plaintiff indicates that he signed the chrono because an officer told him that Inmate Labelle would be going to "the hole" for not less than six months but that was a lie.

Plaintiff let Defendant Warden Godwin know about the fear he felt and requested help. Godwin did not help Plaintiff but let him know about the grievance process. However, Plaintiff indicates that he did not do anything more because he feared retaliation. Plaintiff indicates that there have been many other cases of failure to protect at PVSP.

Plaintiff lists failure to protect, retaliation, and due process violations for his legal claims. He requests declaratory and monetary relief.

## IV.   ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.   Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir.

---

[6] "General Chrono means a CDC Form 128-B (Rev. 4-74) which is used to document information about incarcerated persons and incarcerated person behavior. Such information may include, but is not limited to, documentation of enemies, records of disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social service matters." Cal. Code Regs. tit. 15, § 3000.

2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

### B.   Failure to Protect

Plaintiff alleges that prison officials failed to protect him from the violent attack by Inmate Labelle.

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). And courts within this Circuit have concluded that a prison official's instigation of an attack on an inmate constitutes a constitutional violation. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989) ("First, the question whether Moen and Bojorquez called Valandingham a "snitch" in the presence of other inmates is "material" to a section 1983 claim for denial of the right not to be subjected to physical harm by employees of the state acting under color of law."); *Johnson v. Perry*, No. 2:16-CV-0367 AC P, 2018 WL 3993287, at *2 (E.D. Cal. Aug. 21, 2018), *report and recommendation adopted*, 2018 WL 4385588 (E.D. Cal. Sept. 14, 2018)

1  ("Nevertheless, verbal harassment that is intended to harm or endanger a prisoner may violate
2  the Constitution."); *Black v. Dep't of Correction & Rehab.*, No. CV 17-0062 RGK (RAO),
3  2017 WL 11632247, at *3 (C.D. Cal. Dec. 11, 2017) ("Claims alleging harm to a prisoner's
4  reputation and thereby subjecting the prisoner to retaliation may support a cause of action under
5  section 1983.").

6      To state a failure-to-protect claim, the prisoner must establish that prison officials were
7  deliberately indifferent to a serious threat to the inmate's safety. *Farmer*, 511 U.S. at 834.
8  "'Deliberate indifference' has both subjective and objective components." *Labatad v. Corr.*
9  *Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). The prisoner must show that "the official
10 [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be
11 aware of facts from which the inference could be drawn that a substantial risk of serious harm
12 exists, and [the official] must also draw the inference." *Farmer*, 511 U.S. at 837. "Liability may
13 follow only if a prison official 'knows that inmates face a substantial risk of serious harm and
14 disregards that risk by failing to take reasonable measures to abate it.'" *Labatad*, 714 F.3d at
15 1160 (quoting *Farmer*, 511 U.S. at 847).

16     Plaintiff alleges that Defendant Gonzales observed Inmate Labelle in the dayroom
17 earlier and then opened Plaintiff's cell door so that Inmate Labelle could attack Plaintiff as
18 Gonzales knew that Inmate Labelle was not assigned to Plaintiff's cell and dayroom program
19 had ended. Further, Gonzales was observing from the control booth but failed to act to prevent
20 the assault.

21     Given these factual allegations, the Court concludes that Plaintiff has sufficiently stated
22 a claim for failure to protect against Gonzales to proceed passed screening. Notably, the factual
23 allegations indicate that Gonzales may have deliberately instigated the attack on Plaintiff, or at
24 the least, acted with deliberate indifference in giving Inmate Labelle access to Plaintiff's cell.

25     However, Plaintiff fails to state a claim against any other Defendant. Unlike the
26 allegations against Gonzales, Plaintiff does not indicate that Childers and Vang had anything to
27 do with letting Inmate Labelle into his cell nor that they were observing the attack as it
28 happened. Although Plaintiff states that Gonzales wrote a report stating that Gonzales notified

Childers and Vang of noise near Plaintiff's cell, Plaintiff does not provide facts indicating that either failed to respond in a way amounting to deliberate indifferent. Rather, the facts indicate otherwise. The attacked occurred around 1620 hours and Plaintiff states that PVSP medical staff had responded at 1625 hours, a five-minute window. Childers was reported to use his radio to notify Central Control of the medical emergency and also activated his personal alarm device. And after Gonzales opened Plaintiff's door, Inmate Labelle was handcuffed, and Childers began providing medical attention. Lastly, Plaintiff states that both Vang and Childers found him injured in his cell and Vang went with him to the hospital. In short, while Plaintiff summarily alleges that Childers and Vang failed to protect him, the allegations show that they responded to the incident within a relatively short time frame and provided aid, and Plaintiff fails to sufficiently allege that the manner in which they responded amounted to deliberate indifference.

### C. Retaliation

Plaintiff asserts that, after he complained of harassment, Defendant Hardin said "he would get his" shortly before he was attacked by Inmate Labelle.

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

To prevail on a retaliation claim, a plaintiff may "assert an injury no more tangible than a chilling effect on First Amendment rights." *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Furthermore, "a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id.* at 1271 (citing *Rhodes*, 408 F.3d at 568–69) (emphasis in original). "Evidence of his motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual." *Barth v. Montejo*, No. 2:19-CV-

1874 DB P, 2020 WL 73407, at *2 (E.D. Cal. Jan. 7, 2020).

While prisoners have no freestanding right to a prison grievance process, *see Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the courts hinges on his ability to access the prison grievance system," *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy,* 532 U.S. 223, 230 n.2 (2001). Because filing administrative grievances and initiating civil litigation are protected activities, it is impermissible for prison officials to retaliate against prisoners for engaging in these activities. *Rhodes,* 408 F.3d at 567; *Uribe v. McKesson*, No. 08CV01285 DMS NLS, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) ("An inmate's reporting of officer misconduct, or the attempt to do so verbally or in writing, constitutes speech or conduct entitled to First Amendment protection.").

Plaintiff alleges that he filed a grievance against Defendant Hardin on May 13, 2021, for harassment and then continued to complain about harassment. Hardin then told him, "He would get his." One week later, Inmate Labelle told Plaintiff "I heard you filing paperwork on Cos; when your door opens you getting it." Inmate Labelle then violently assaulted Plaintiff, resulting in serious injuries.

Given these factual allegations, the Court finds that Plaintiff has sufficiently stated a claim for retaliation in violation of the First Amendment against Hardin.[7]

### D.   Due Process

Plaintiff's due process allegations appear to mainly stem from his allegations that Defendant Sgt. Chavez filed a false RVR accusing Plaintiff of fighting, which narrative Defendant Kuhn accepted despite having contrary evidence available. To a lesser extent, Plaintiff appears assert a claim based off Defendant Lt. Chavez submitting a compatibility chrono with a false date.

---

[7] Plaintiff's retaliation claim appears aimed at only Hardin. But to the extent that Plaintiff attempts to allege retaliation against any other Defendant, he fails to provide sufficient facts under the standards given above.

However, the filing of a false RVR or other false document by a prison official against a prisoner is not a *per se* violation of the prisoner's constitutional rights. *See Muhammad v. Rubia*, No. C08-3209 JSW PR, 2010 WL 1260425, at *3 (N.D. Cal. Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (internal citation omitted.); *Harper v. Costa*, No. CIVS07-2149LKK DADP, 2009 WL 1684599, at *2–3 (E.D. Cal. June 16, 2009), *aff'd*, 393 Fed. Appx. 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California . . . have determined that a prisoner's allegation that prison officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right and (2) when the prisoner alleges that he was not afforded procedural due process in a proceeding concerning the false report. *See Hines v. Gomez,* 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections).

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due

Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

Additionally, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum procedural protections prison officials must provide an inmate facing disciplinary charges are: (1) a written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action; (3) the right for the inmate to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; and (4) assistance where the issues presented are complex or the inmate is illiterate. *See Wolff*, 418 U.S. at 564–70. "Some evidence" must also support the hearing officer's decision, and the evidence must have some indicia of reliability. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *accord Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is minimally stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455–56.

These protections "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 484).

With these standards in mind, Plaintiff provides no allegations that either the purportedly false RVR or false chrono were issued in retaliation for his exercise of his constitutional rights. Moreover, he does not allege that he was denied any of the due process protections specified above, such as written notice of the charges at least 24 hours before his

RVR hearing. Further, Plaintiff was found not guilty of the RVR and does not allege the existence of a liberty interest that he was denied or the imposition of an atypical and significant hardship due to the RVR or chrono.

Accordingly, the Court concludes that Plaintiff fails to state any due process claim against any Defendant.

### E. Supervisor Liability

Plaintiff appears to seek to hold Defendant Warden Godwin liable under a theory of supervisor liability.

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged. *Iqbal,* 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," *Hansen*, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence

12

in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

Here, Plaintiff says that he sought help from Defendant Warden Godwin and expressed that he was fearful. It is unclear if this was before or after the attack and what Plaintiff specifically told Godwin. Moreover, it is unclear which legal claim Plaintiff attempts to hold Godwin liable for.

Under the standards described above, Plaintiff fails to sufficiently allege that Godwin had any personal involvement with the alleged deprivations of his constitutional rights or implemented a policy that was the moving force behind the violations. Accordingly, Plaintiff fails to state any claim against Godwin.

## V.   CONCLUSION, ORDER, AND RECOMMENDATIONS

The Court has screened Plaintiff's amended complaint and has found cognizable the following claims: Plaintiff's claim for failure to protect in violation of the Eighth Amendment against Officer J. Gonzales and Plaintiff's claim for retaliation in violation of the First Amendment against Officer J. Hardin.

The Court will recommend that all other claims and Defendants be dismissed without further leave to amend. Notably, despite being granted leave to amend once before and adding allegations, Plaintiff has still failed to state any further cognizable claims, indicating that further leave to amend would be futile.

Accordingly, IT IS ORDERED as follows:

1. The Clerk of Court shall assign a District Judge to this case.
2. The Clerk of Court shall add Defendants (1) CO C. Vang; (2) Sgt. P. Chavez; (3) Lt. P. Chavez; (4) Captain R. Kuhn; (5) Warden Ron Godwin; and (6) Sgt. F. Nevarez to the list of defendants on the docket.

Further, IT IS RECOMMENDED as follows:

1. This case proceed on the following claims: Plaintiff's claim for failure to protect

in violation of the Eighth Amendment against Officer J. Gonzales and Plaintiff's claim for retaliation in violation of the First Amendment against Officer J. Hardin.

2. All other claims and Defendants be dismissed without further leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 6, 2024**         /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE